JAMES KANE & others[1] *vs.* CEDRIC J. VANZURA & others.[2]

No. 09-P-1185.

Suffolk. December 1, 2010. - February 16, 2011.

Present: GRASSO, GREEN, & VUONO, JJ.

*Beach. Way. Adverse Possession and Prescription. Easement. Real Property,*
Beach, Easement, Adverse possession.

In a civil action involving the plaintiffs' claims of rights to use a beach situated
behind the defendants' homes, a Land Court judge erred in concluding that a
certain instrument, in which the estate of the original grantor purported to
convey rights of access to and use of the beach, was invalid, where a previ-
ous conveyance of property by the grantor to one of the defendants, under a
deed description bounded "on" two walks, did not operate to divest the
grantor's estate of its fee interest in the beach and tidelands on the seaward
side of those ways, its fee interest in the portion of one walk southeast of its
centerline, or its right to use the other walk as a means of access to the
beach and tidelands [753-757]; however, although the plaintiffs claiming
rights under that instrument could not sustain a claim of prescriptive use
because their use was authorized, the judge properly concluded that other
plaintiffs without any claim of right under that instrument had established
prescriptive rights over one of the walks [757-759].

CIVIL ACTION commenced in the Superior Court Department on
June 29, 2004.

After transfer to the Land Court Department, the case was
heard by *Alexander H. Sands,* J.

*James S. Timmins* for the plaintiffs.

*Joseph E. Kelleher, III,* for Michael Donahue & Mary Donahue.

[1]Irene Kane; Donald Mann; Geraldine Mann; Melinda Ponder; Ronald C.
Cates; Dana R. Malcolm; Richard McCourt; Virginia McCourt; Maryanne
Campbell; Arthur W. Handrahan; Stacy A. Dow; Robert P. Masland, III; Anne
D. Masland; Alfred Cox; Edythe Cox; Mark G. Patrolia; Gayle Callahan;
Anthony Arnold; Kathleen Arnold; Mary T. Dillon; Margaret S. Iser; Charles
J. Murray; and Carol A. Murray.

[2]Elizabeth K. Vanzura, George Schwartz, Martha Schwartz, Michael Donahue,
Mary Donahue, and Amyra O'Connell.

*Bruce A. Issadore* for Cedric J. Vanzura & Elizabeth Vanzura.

*Kathryn Creedon Sullivan* for George Schwartz & Martha Schwartz.

GREEN, J. At issue are the plaintiffs' claims of rights to use a beach in Hingham Harbor, situated behind the defendants' homes. In a thorough and detailed memorandum of decision, a judge of the Land Court concluded that the claim of deeded rights by certain of the plaintiffs was invalid, but that some of those plaintiffs, as well as others who asserted no claim of deeded rights, nonetheless had acquired prescriptive rights to the beach, together with rights to pass over a way to gain access to the beach. We conclude that the judge erred in his conclusion that a 1929 instrument, purporting to convey rights of access to, and use of, the beach, was invalid because the grantor previously had divested all of its interest in the beach (and access ways) by operation of law. We accordingly reverse the judgment insofar as it declared that the plaintiffs claiming deeded rights do not hold the right to use the way. Because the parties to this action do not include the holder of the record interest in the beach, we vacate the judgment insofar as it adjudicated rights in the beach itself.

*Background.* The plaintiffs and defendants own various parcels of land in Hingham in the vicinity of Crow Point, on Hingham Harbor. The location and approximate configuration of the defendants' properties, the beach, and the ways providing access to the beach are shown on the plan appended to this opinion. The O'Connell, Vanzura, and Schwartz properties are situated on the southwesterly side of Melville Walk as it leads from Downer Avenue to the water. The Donahue property is situated on the northeasterly side of Melville Walk, directly opposite the O'Connell property (and opposite a portion of the Vanzura property). The southern corner of the Donahue property is on the northern corner of the intersection of Melville Walk and Alice Walk.[3] The beach at issue in the case is on the seaward (southeasterly) side of Alice Walk, across from the Donahue property, and on the northeasterly side of Melville Walk, across from the Vanzura property. The judge considered the land on the seaward side of Alice Walk to consist entirely of tidelands,

---

[3]Melville Walk and Alice Walk are sometimes collectively referred to herein as the "ways."

and neither party challenges his finding; we accordingly will occasionally use the term "tidelands" to refer to the beach.[4]

In the latter part of the nineteenth century, all of the land now owned by the defendants was held by Samuel Downer. Downer died in 1881. The defendants all trace title to their respective properties to deeds out of Downer's estate. The Vanzura property traces its title to two deeds, one dated May 4, 1897, and another dated January 11, 1917; both describe the property conveyed as bounded "on Melville Walk." The Donahue property traces its title to a deed dated May 5, 1897, which described the property as bounded southwesterly "on Melville Walk" and southeasterly "on Alice Walk." The O'Connell property traces its title to two deeds, both dated May 24, 1898, and both describing the property as bounded easterly "by Melville Walk." The Schwartz property traces its title to a deed dated June 19, 1914; it described the property as bounded northeasterly "on Alice Walk." Melville Walk and Alice Walk both are shown on recorded plans referenced in the above-described deeds; both lead from Downer Avenue, a public way, to a sandy beach abutting Hingham Harbor.

The plaintiffs claim the right to use the beach, and the right to use Melville Walk to gain access to the beach. Twelve of the twenty-four plaintiffs claim rights under an instrument executed by the trustee under the will of Samuel Downer, dated May 14, 1929,[5] which conveyed:

> "as appurtenant to the land on Downer Avenue and Jarvis Avenue in that part of said Hingham called Crow Point . . . the right, so far as I have power to grant the same, to use the beach and shore of Hingham Harbor opposite the end of

---

[4]The precise delineation of the beach is unclear from the record; indeed, the judge commented that the beach and tidelands may extend into Alice Walk itself.

[5]The plaintiffs claiming rights under the 1929 Downer deed (to whom we shall refer collectively as the "deeded rights plaintiffs") are James and Irene Kane (Kanes); Donald and Geraldine Mann (Manns); Melinda Ponder; Stacy A. Dow; Alfred and Edythe Cox (Coxes); Mark G. Patrolia and Gayle Callahan; and Anthony and Kathleen Arnold (Arnolds). Because the judge concluded that the 1929 instrument was ineffective to convey any rights in the beach and the ways, he did not reach or consider any other question that may exist concerning the claims of the deeded rights plaintiffs to rights derived from the 1929 instrument, and we decline to undertake such a determination in the first instance.

> Melville Walk and Lot 1 on [a certain recorded plan] for
> bathing, boating, and all proper forms of recreation."

The remaining twelve plaintiffs claim rights based on prescrip-
tive use of the beach and Melville Walk.

The evidence at trial included testimony and documentary
evidence of widespread use of the beach by residents of the
Crow Point neighborhood over the span of many years. An un-
incorporated association known as the Crow Point Community
Club (club) held social events at the beach, collected dues, and
maintained liability insurance. A community bulletin board was
erected on the beach in the 1950's, and a float in Hingham
Harbor lay directly off the beach in the 1960's. Boats were
stored at, and launched from, the beach. In 1999, the club sent a
letter to the Donahues, expressing concern that the Donahues
had begun to interfere with their rights to use the beach. On
May 6, 2004, the Donahues, the Stimsons (the predecessors of
the Vanzuras), and O'Connell erected a locked gate across
Melville Walk at its intersection with Downer Avenue, precipitat-
ing the present action.

In concluding that the 1929 Downer conveyance was invalid,
the judge interpreted the Colonial Ordinance of 1641-1647[6] to
preclude the tidelands situated on the seaward side of Alice
Walk from being held separately from abutting uplands. The
judge reasoned that, by 1929, the Downer estate no longer held
any rights in either Alice Walk or Melville Walk because it
previously had conveyed the Donahue property under the above-
described 1897 deed, which described it as bounded "on"
Melville Walk and "on" Alice Walk,[7] and that, under the derelict

---

[6]The Colonial Ordinance of 1641-1647 states, in part:

> "It is Declared, That in all *Creeks, Coves* and other places, about and
> upon *Saltwater,* where the Sea ebbs and flowes, the proprietor of the
> land adjoyning, shall have propriety to the low-water mark, where the
> Sea doth not ebb above a hundred Rods, and not more wheresoever it
> ebbs further."

*Opinion of the Justices,* 365 Mass. 681, 685 (1974), quoting from The Book
of the General Lawes and Libertyes 50 (1649).

[7]The grantor had made no prior express conveyance of its interest in the
portion of either Melville Walk or Alice Walk abutting the defendants' proper-
ties, or of its interest in the tidelands on the seaward side of the ways.

fee statute, G. L. c. 183, § 58,[8] a grant of land bounded by a way necessarily includes the fee in the entirety of the way in circumstances where the grantor owns no land on the opposite side of the way. The judge similarly concluded that, by virtue of the Colonial Ordinance, the 1897 deed operated to convey the tidelands on the seaward side of Alice Walk as well. Accordingly, because by 1929 the Downer estate previously had conveyed all of its interest in both the ways and the tidelands on their seaward side, the judge concluded that it retained nothing to convey under the 1929 instrument. The judge found, however, that eleven of the plaintiffs (including six of those claiming deeded rights)[9] had made sufficient use of the beach (and of Melville Walk as their means of access) for a period in excess of twenty years to have acquired prescriptive rights.

*Discussion.* a. *Deeded rights.* "The Colonial Ordinance of 1641-1647 established that a person holding land adjacent to the sea shall hold title to the land out to the low water mark or 100 rods (1,650 feet), whichever is less." *Pazolt* v. *Director of the Div. of Marine Fisheries*, 417 Mass. 565, 570 (1994).[10] In

---

[8]General Laws c. 183, § 58, as amended by St. 1990, c. 378, § 1, provides as follows:

> "Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (*a*) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (*b*) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

The statute, which became effective in 1972, has retroactive effect, with two exceptions the parties agree are inapplicable to the present case. See St. 1971, c. 684, § 2.

[9]Of the plaintiffs claiming deeded rights, the judge found that the Kanes, Manns, and Arnolds had acquired prescriptive rights, but that the others had not. In addition, the judge found that Arthur W. Handrahan, Charles J. and Carol A. Murray, Maryanne Campbell, and Mary T. Dillon (who asserted no claim of deeded rights) had acquired prescriptive rights.

[10]"The main object of the Massachusetts Colony ordinance has always

his reliance on the Colonial Ordinance for the conclusion that a landowner cannot own tidelands without ownership of abutting uplands, the judge appears to have applied a rule of construction that has developed from the Colonial Ordinance: in construing deeds of land adjacent to the sea, "[t]he 'presumption of law is, that title to the flats follows that of the upland on which they lie, and proof of title to the upland established a title to the flats.' . . . '[A]n owner may separate his upland from his flats, by alienating the one, without the other.' " *Id.* at 570. See *Houghton* v. *Johnson*, 71 Mass. App. Ct. 825, 829 (2008).

However, as the quoted language makes clear, the principle is not absolute, and it is possible to sever tidelands from abutting uplands. Perhaps more to the point, the tidelands at issue in the present case are not adjacent to the uplands conveyed under the deed in the ordinary sense, as the uplands abut a way on one side, and the tidelands abut the way on the other. In such circumstances, the way is considered a bounding monument, and "[a] boundary 'by a way' . . . excludes the flats beyond." *Commonwealth* v. *Roxbury*, 9 Gray 451, note at 524-525 (1857).[11] In addition, since the 1897 deed of the Donahue property did not convey the tidelands on the seaward side of Alice Walk, the estate of Samuel Downer still owned other land on the opposite side of that way, and the derelict fee statute accordingly operates only to convey the fee in that way to its center line along the boundary of the Donahue property. In other words, contrary to the conclusion of the judge, following the 1897 deed of the

---

been understood to be to induce the erection of wharves for the benefit of commerce." *Boston Waterfront Dev. Corp.* v. *Commonwealth*, 378 Mass. 629, 636 (1979), quoting from *Commonwealth* v. *Roxbury*, 9 Gray 451, note at 503, 515 (1857). The referenced note "is an extensive note immediately following the opinion in *Commonwealth* v. *Roxbury*, but not a footnote of the court thereto. The note appears to have been written by Horace Gray, Jr., who was then the Reporter of Decisions for [the Supreme Judicial Court], and who served in that position from 1854 to 1860. Thereafter he served as an Associate Justice of [the Supreme Judicial Court] from 1864 to 1873, and as Chief Justice from 1873 to 1882. He resigned as Chief Justice upon his appointment to the United States Supreme Court where he served from 1882 to 1902. His note, covering more than twenty-five printed pages, is a carefully annotated review of the development of the law relating to rivers, ponds and the seashore, and to lands abutting thereon, starting with the grant of November 3, 1620, and continuing to the date the note was written, in 1857." *Id.* at 636 n.3.

[11]The quoted language appears in a nearly encyclopedic list of examples illustrating how the rule of construction applies to various linguistic formulations.

Donahue property, the Downer estate still retained ownership of the beach, together with the fee to the center line of that portion of Alice Walk abutting the Donahue property.[12]

Moreover, though by 1929 the estate of Samuel Downer had conveyed all of the land it owned on both sides of Melville Walk, those conveyances operated only to divest the estate of its interest in the fee in Melville Walk, and thereby to sever the beach parcel from the land, previously held in common ownership, which furnished access to the beach. In such circumstances, the severance of title may give rise to an easement by implication or necessity over the way, even though the underlying fee has passed by operation of the derelict fee statute. See *Adams* v. *Planning Bd. of Westwood*, 64 Mass. App. Ct. 383, 390 (2005). In the absence of an express reservation, an easement by necessity will arise "only if clearly so intended by the parties to the deed." *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 628 (1990), quoting from *Scagel* v. *Jones*, 355 Mass. 208, 211 (1969). The burden of proving such intent lies with the party claiming the easement, here the plaintiffs. See *id.* at 629, and cases cited. In part because the grantor of a deed has the ability to control its terms, the burden of proving intent is higher for a party claiming an easement by implied reservation than for a party claiming an easement by implied grant. See *ibid.*

In the present case, no strict necessity would require imposition of an easement over Melville Walk for access to the beach; the estate of Samuel Downer did not convey its interest in the fee of Alice Walk adjacent to lots 3-7 until 1920, by which time the fee in the entire length of Melville Walk had already passed with conveyances of the abutting parcels.[13] However, the requisite

---

[12]The defendants press a somewhat circular argument, in an attempt to combine the rule of construction prescribed by the derelict fee statute with that derived from the Colonial Ordinance: they suggest that, by virtue of the derelict fee statute, the beach should be viewed as abutting the Donahue property (for purposes of application of the rule that tidelands are presumed to pass with a conveyance of abutting uplands) or, alternatively, that by virtue of the Colonial Ordinance, the Downer estate should be viewed as owning no land on the seaward side of Alice Walk (for purposes of application of the derelict fee statute). If not circular, the argument is at best a bootstrap, since either alternative requires application of one rule of construction in a manner that is dependent on application of a second rule of construction, which in turn is applicable only if the first applies.

[13]For the relative location of the lots and ways, see the appended plan.

necessity "is not an absolute physical necessity, but no more than a reasonable necessity." *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100, 105 (1933). Moreover, evidence of use of a way for access preceding severance of the dominant parcel from the servient way will support the creation of an easement by implication. See *Boudreau* v. *Coleman, supra* at 630. Rejecting the plaintiffs' claim of an easement by implication over Melville Walk, the judge expressly found that "[i]t is likely that Downer and the Downer Estate would have used Melville Walk as access to the Beach (in fact, it appears that the only purpose of Melville Walk in the 1897 plan, other than as access to Defendants' lots, was as access to the Beach, since it does not lead anywhere else)."[14] That finding is corroborated by the evidence in the record showing that, until 1924 (when it conveyed the large tract from which the plaintiffs' properties later were divided), the Downer estate owned a large tract of land directly across Downer Avenue, and to the northwest of its intersection with Melville Walk. Though the Downer estate retained ownership of Alice Walk at the time of its 1897 conveyance of the Donahue property, it is extremely unlikely that it would have intended to travel to the beach solely by going northeasterly along Downer Avenue, past Melville Walk, continuing to Alice Walk, and then retreating southeasterly along Alice Walk to the beach.[15] It is also of some (though not conclusive) significance

---

[14]Though the judge also found that the Downer estate could not have intended to convey rights over Melville Walk when, in 1924, it conveyed the large tract from which the plaintiffs' properties are divided, he based that finding on his erroneous legal conclusion that the Downer estate at that time retained no interest in the beach. The subsequent intent of the Downer estate to convey (by means of the 1929 instrument on which the plaintiffs base their claim) the right to use Melville Walk and the beach is manifest by the express terms of the instrument.

[15]We note that the Land Court in 1922 issued a registration decree in favor of Arthur C. Harvey (the then owner of lots 3-7), which, over the objection of the then-owner of the Donahue property, decreed the right to use Melville Walk *as appurtenant to* lots 3-7, based on the 1920 conveyance by the Downer estate to Harvey of the fee in the portion of Alice Walk abutting lots 3-7, and the tidelands on the seaward side thereof, under a deed that conveyed those lots by reference to the 1897 plan depicting Melville Walk, but which otherwise included no express grant of easement rights over Melville Walk. That conclusion necessarily and expressly was based on a conclusion that such use of Melville Walk was intended by the parties to the 1920 deed, and necessarily (but implicitly) rests on a conclusion that the Downer estate possessed the right to convey such rights in 1920 (long after the 1897 deed on which the

that the destination of any travel over Melville Walk is a beach; as the judge observed, it is extremely likely that Downer, and those claiming through his estate, would have used Melville Walk for access to the beach. See, e.g, *Sheftel* v. *Lebel*, 44 Mass. App. Ct. 175, 175-176 (1998); *Murphy* v. *Olsen*, 63 Mass. App. Ct. 417, 422-423 (2005).

Contrary to the conclusion of the judge, the 1897 conveyance of the Donahue property under a deed description bounded "on" Melville Walk and Alice Walk did not operate to divest the estate of Samuel Downer of its fee interest in the beach and tidelands on the seaward side of those ways, its fee interest to the portion of Alice Walk southeast of its centerline, or its right to use Melville Walk as a means of access to the beach and tidelands. Accordingly, at the time of its 1929 conveyance of rights to use the beach and the ways, the estate of Samuel Downer held the rights it purported to convey by that instrument.[16]

b. *Prescriptive rights.* The judge concluded that some of the parties claiming deeded rights had established prescriptive rights, while others had not. However, our conclusion that the 1929 instrument validly conveyed rights to use the beach and ways compels the conclusion that none of the plaintiffs with deeded rights may sustain a claim of prescriptive use, since their use was authorized under the 1929 instrument. See generally *Ivons-Nispel, Inc.* v. *Lowe*, 347 Mass. 760, 763 (1964), quoting from *Flynn* v. *Korsack*, 343 Mass. 15, 18 (1961) ("[W]herever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish title by prescription . . . unless controlled or explained"). See also, e.g., *Lincoln* v. *Emerson*, 108 Mass. 87, 91 (1871) (mortgagor's possession of property under

judge in the present action based his conclusion that the Downer estate was divested of all such rights). The plaintiffs complain in their brief that the judge's holding in the present matter is contrary to the Harvey registration decree, but they make no argument that they are entitled to use it offensively against the Donahues in the present action, under principles of issue preclusion; we accordingly do not consider the question.

[16]As we observe, *infra*, no party in the present action appears to hold an interest in the fee of the beach, as successor in interest to the estate of Samuel Downer. The judgment accordingly cannot adjudicate any question of the rights of any such successor in interest.

equity of redemption is not adverse to mortgagee, absent disseisin); *Foster* v. *Lee*, 271 Mass. 200, 207 (1930) (tenant's possession is not adverse to landlord). Moreover, our conclusion that the estate of Samuel Downer retained its interest in the tidelands on the seaward side of Alice Walk following the 1897 deed requires that we vacate so much of the judgment as declared prescriptive rights to use the beach; neither the estate (nor anyone appearing to stand as its successor in interest) is a party to this action.[17]

We briefly consider the defendants' cross-appeal challenging the judge's conclusion that five plaintiffs without any claim of right under the 1929 instrument established prescriptive rights over Melville Walk.[18]

Contrary to the defendants' assertions, the evidence amply supported the judge's conclusion that the prescriptive plaintiffs established sufficiently adverse, continuous, and defined use to support a claim of prescriptive rights over Melville Walk. The judge found (with ample record support) that each of the prescriptive plaintiffs made regular, seasonal use of Melville Walk

---

[17]Though the judge's original decision expressed some uncertainty concerning the precise boundaries of the beach, a revised decision and revised judgment clarified that the beach area at issue consisted solely of the area behind the Donahue property, and excluded the area behind the Schwartz property. The judge directed the parties to prepare and file a recordable plan delineating the boundaries of the area of the beach described by the revised judgment, in accordance with directives supplied in the revised decision, and the plaintiffs do not appeal from the description expressed by the judge. Accordingly, there remains no question concerning potential claims by the deeded rights plaintiffs of adverse use of any portion of the Schwartz property.

[18]Of the plaintiffs who raise no claim of deeded rights, the judge found that plaintiffs Arthur W. Handrahan, Charles J. and Carol A. Murray, Maryann Campbell, and Mary T. Dillon had established valid claims of prescriptive rights. For convenient reference we shall refer to them collectively as the "prescriptive plaintiffs." During the trial, the judge allowed the defendants' motion for directed verdict against Ronald C. Cates; Dana R. Malcolm; Richard McCourt; Virginia McCourt; Robert P. Masland, III; Anne D. Masland; Edythe Cox; Alfred Cox; Mark G. Petrolia; and Gayle Callahan. The judge found after the trial that Margaret S. Iser, Stacy A. Dow, and Melinda Ponder did not establish a valid claim of prescriptive rights. Of the latter two groups, only Iser has appealed; her appeal must fail, however, because her evidence established use for only nineteen and one-half years. See G. L. c. 187, § 2. See also *Tucker* v. *Poch*, 321 Mass. 321, 323 (1947) (claim of prescriptive use requires use that was "open, uninterrupted and adverse for a period of not less than twenty years").

for access to the beach, for periods well in excess of the required prescriptive period.[19],[20]

*Conclusion.* The judgment is reversed insofar as it declares that the Donahues own the fee interest in the beach, that the 1929 deed conveyed no rights in the beach or Melville Walk to the deeded rights plaintiffs,[21] that the deeded rights plaintiffs hold no easement rights in Melville Walk, and that certain of the deeded rights plaintiffs have acquired prescriptive rights to use Melville Walk and the beach. The case is remanded to the Land Court for the determination of the rights held by the deeded rights plaintiffs. The judgment is affirmed insofar as it declares that the prescriptive rights plaintiffs have established prescriptive rights in the southerly portion of Melville Walk.[22] The judgment is also affirmed insofar as it dismisses the claims of the remaining plaintiffs.

*So ordered.*

---

[19]Mary T. Dillon used the way for forty-seven years, from 1957 to 2004. Maryann Campbell used the way for two separate periods of more than twenty years, from 1952-1974, and again from 1978-2004. Arthur W. Handrahan used the way regularly himself from 1955-1970, and his children continued to use the way when they visited him in the years that followed. Carol A. Murray has used the way for access to the beach since 1949, either as a resident or as a guest of her mother's home at 118 Downer Avenue.

[20]We note that the record raises at least a possibility that the prescriptive plaintiffs' use of Melville Walk occurred by permission of one or more of the deeded rights plaintiffs. As we have observed, a use conducted with permission is not unexplained and cannot support a claim of adverse use. However, the defendants have made no claim that the prescriptive plaintiffs' use of the way was based on permission granted by the deeded rights plaintiffs (instead contending consistently that the deeded rights plaintiffs hold no rights in the way). To the extent that the defendants argued that the plaintiffs' use was permissive, they based their argument on permission implied by acquiescence of the defendants (a claim the judge properly rejected). Accordingly, we consider the defendants to have waived any potential claim that the prescriptive plaintiffs' use of the way was with the permission of the deeded rights plaintiffs.

[21]See note 5, *supra.*

[22]The judgment is vacated, however, insofar as it imposes an obligation on the prescriptive plaintiffs to indemnify and hold the defendants harmless from loss or damage resulting from the prescriptive plaintiffs' use of Melville Walk and the beach. The judge cited no authority for the imposition of that obligation, and we are aware of none. Any rights the defendants may have to recover for any such loss or damage arise from the common law.