JOHN J. LEAHY & others[1] vs. MONICA T. GRAVELINE, trustee.[2]

No. 11-P-605.

Suffolk. March 6, 2012. - July 12, 2012.

Present: VUONO, GRAINGER, & CARHART, JJ.

*Easement. Beach. Real Property,* Easement, Beach.

In a civil action brought in the Land Court, involving a longstanding dispute concerning the rights of successors in title to certain parcels of property in a subdivision, the judge, ruling on motions for summary judgment, properly concluded that the plaintiff nonwaterfront lot owners had implied easement rights in the beach at issue, where, based on the deeds, the plans, and the circumstances attendant to, and following, the establishment of the subdivision, the plaintiffs satisfied their burden of proving that an implied easement was intended with respect to use of the beach [146-149]; further, after a bench trial, the judge properly concluded that the implied easement was not extinguished through adverse possession, in that the defendant trust's occupation of the land was not irreconcilable with the rights of the plaintiffs, and that the trust was not a bona fide purchaser without knowledge of the easement [149-151].

CIVIL ACTION commenced in the Land Court Department on July 30, 2004.

Motions for partial summary judgment were heard by *Alexander H. Sands, III*, J., and the remaining issues were also heard by him.

*David H. Rich* for the defendant.

*Edward S. Englander* (*Denise A. Chicoine* with him) for the plaintiffs.

[1]Martha A. Leahy; John J. Twomey; Margaret B. Twomey; William O. Bill; Elinor M. Bill; Joan Delmore; Barry E. Egan and Patricia Egan, as trustees of Egan Realty Trust; William Henderson; Margaret Henderson; Janet Hunt; Sandra Kristiansen; Stuart Kristiansen; Albert F. Lenzi; Joan M. Lenzi; Cristin F. Luttazi; Shiela O. Luttazi; Brian J. Melia; Maureen Walsh-Melia; Tracy Ann Murphy; Claire Nauen; Park Avenue Associates Inc.; Donald Quinlan; Patricia Quinlan; Daniel R. Rosenthal; and Elizabeth Wade Whitehead, as trustee of Lansing Realty Trust.

[2]Of the Monica T. Graveline Trust.

CARHART, J. The defendant, as trustee of the Monica T. Grave-line Trust (trust), appeals from a Land Court judge's decision that (1) the plaintiffs, nonwaterfront lot owners in the Hyannis Park subdivision, have an implied easement allowing them to use a beach on Lewis Bay adjoining property owned by the trust, and (2) said easement has not been abandoned or extinguished.[3] We affirm.

*Background.* This case involves a longstanding dispute concerning the rights of successors in title to certain parcels of property in a subdivision established by three plans dated 1892, filed in the Barnstable County registry of deeds in 1892, 1894, and 1895 (collectively referred to as 1892 plans), to use the beach on Lewis Bay.[4] The final plan filed in 1895 shows several hundred lots, thirty of which are on the waterfront, and reflect five large, irregularly-shaped, unnumbered lots, one of which abuts Lewis Bay. The remaining lots are appurtenant to the waterfront properties as shown on the 1892 plans.

In the late 1800s, the original developer, Security Investment Company (Security), envisioned a subdivision to be known as Hyannis Park. In furtherance of its plan, Security placed several advertisements in the Brockton Daily Enterprise newspaper proclaiming the benefits of owning a lot in the subdivision. Among the claims made in an advertisement dated May 20, 1893, were that the lots were "Some of the Best Shore lots in New England," with a "Cool breeze all the time, good bathing, boating and fishing, nice beach, no undertow, shade trees on several of the lots." Similar advertisements continued through 1898, and referred to the lots as "Shore Lots."

The original deeds conveying nonwaterfront lots to the plaintiffs' predecessors in title make no mention of an easement

---

[3]Numerous other defendants were named but only the trust is involved in this appeal.

[4]The Land Court considered a similar claim in 1986. That case involved a claim by some owners of the nonwaterfront lots in the Hyannis Park subdivision of an easement by prescription. Those parties are not involved in this case. In a very detailed decision, the trial judge in that case, the former chief justice of the Land Court, concluded that the nonwaterfront titleholders in the Hyannis Park subdivision had an easement by prescription to use the beach on Lewis Bay. Although the decision is not binding on us, it is instructive. We affirmed the judgment in an unpublished memorandum and order pursuant to our rule 1:28. See *Weiss* v. *Kevorkian*, 27 Mass. App. Ct. 1405 (1989).

giving them the right to use the beach on Lewis Bay. The trust is a successor in title to three waterfront lots, numbered 109, 110, and 111, and six nonwaterfront lots.

In 1929, J.P. Scudder, an original trustee of Security, purported to convey the beach abutting the trust's waterfront lots to the trust's predecessors in title. The 1929 deeds identified the land being conveyed as running from the previously-established lot line to the low water line as shown on the 1892 plans.

The waterfront property owners' claim to exclusive possession and use of the Lewis Bay beach area prompted the plaintiffs to commence this action for a declaratory judgment that they had an easement by implication and an easement by prescription in the Hyannis Park beach (beach). The parties filed cross motions for summary judgment in the Land Court, which motions were heard on February 16, 2007. On August 28, 2008, in a very thorough, comprehensive decision, the Land Court judge ruled that the plaintiffs have implied easement rights in the beach. In allowing summary judgment in favor of the plaintiffs, the judge determined that the 1929 Scudder deeds were a nullity because Scudder had no authority to execute any documents on behalf of Security. He also noted that a number of the 1929 deeds, including those purporting to convey the beach adjoining lots 109, 110, and 111, contained a provision that stated that the beach was to be left undeveloped and kept open for public use. He also concluded that the trust's claims that the easement rights had been abandoned or extinguished would have to be resolved by trial. A trial on these issues was held on October 28 and 29, 2009, after which the judge issued another thorough, comprehensive decision, and ruled that the plaintiffs have not abandoned the easement. He also found that the implied easement was not extinguished through adverse possession. The trust argues that the judge erred in granting summary judgment in favor of the plaintiffs and in finding that the trust is bound by the easement or that the easement has not been extinguished.

*Discussion.* 1. *Existence of easement.* There is no dispute in this case over the plaintiffs' access to the beach on Lewis Bay. Rather, the plaintiffs sought and were granted a declaration that they have an implied easement to use the beach for regular beach purposes. The burden of proving an implied easement is

on the party asserting it. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100, 105 (1933). An implied easement "must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Labounty* v. *Vickers*, 352 Mass. 337, 344 (1967), quoting from *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940).

It is undisputed that the original deeds at issue in this case do not contain language giving the plaintiffs the right to use the beach on Lewis Bay. However, "[i]t is familiar law that the owner of land may make use of one part of his land for the benefit of another part in such a way that upon a severance of the title an easement, which is not expressed in the deed, may arise which corresponds to the use which was previously made of the land while it was under common ownership." *Joyce* v. *Devaney*, 322 Mass. 544, 549 (1948).

In concluding that Security intended to retain an easement in the use of the beach for the benefit of nonwaterfront lot owners, the judge considered the deeds themselves, the advertisements depicting "[s]hore lots" with "unsurpassed" bathing facilities that "[p]eople come from miles around to" use, and the various plans depicting the Hyannis Park subdivision. The original deeds refer to the 1892 plans, which became "a part of the contract so far as [was] necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." *Labounty*, *supra*, quoting from *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 354 (1926). The plans depict hundreds of numbered lots along Lewis Bay, as well as a long, unnumbered, and undivided beach area bordering the lot lines and the bay itself. It is clear from the advertisements that Security intended, before and while the lots were being individually conveyed, that the beach area would be open to the public for bathing and recreational purposes. See *Kane* v. *Vanzura*, 78 Mass. App. Ct. 749, 756 (2011) ("evidence of use of a way for access preceding severance of the dominant parcel from the servient way will support the creation of an easement by implication"). It is also undisputed that none of the original

deeds conveying waterfront lots to the trust's predecessors in title contains language conveying the beach area.

The trust argues, however, that it owns the beach adjoining its property by virtue of the Colonial Ordinance of 1641-1647. "The Colonial Ordinance of 1641-1647 established that a person holding land adjacent to the sea shall hold title to the land out to the low water mark or 100 rods (1,650 feet), whichever is less." *Pazolt* v. *Director of the Div. of Marine Fisheries*, 417 Mass. 565, 570 (1994). The trust contends that the conveyance of lots 109, 110, and 111 by Security to the trust's predecessors in title necessarily included the adjacent beach. However, "an owner may separate his upland from his flats, by alienating the one, without the other." *Ibid.*, quoting from *Valentine* v. *Piper*, 22 Pick. 85, 94 (1839). Here, Security expressly delineated the boundaries of lots 109, 110, and 111, and the deeds thereto refer to the 1892 plans reflecting open space between the lot lines and the low water mark. Moreover, Scudder's attempt in 1929 to deed the beach appurtenant to lots 109, 110, and 111 demonstrates that Security did not intend to include the beach in its original conveyances to the trust's predecessors in title. Further proof that Security intended, at the time of the original conveyances, to retain an easement in the beach for the benefit of all members of the Hyannis Park subdivision may be found in the 1929 Scudder deeds, which expressly state that the beach area purportedly conveyed was to be left undeveloped and kept open for public use.

We agree with the judge that this case is controlled by *Reagan* v. *Brissey*, 446 Mass. 452 (2006). The beach, like the parks at issue in that case, was part of a common scheme for a vast subdivision with exceptional beach and bathing facilities. It was entirely reasonable for the judge to infer from the advertisements that the existence of the beach was an important feature in Security's attempt to sell the nonwaterfront lots located in the Hyannis Park subdivision, and that "without the use of the [beach], the majority of lot owners would not be able to enjoy the social and recreational pleasures to be had by [Hyannis Park]." *Id.* at 459. Thus, "[b]ased on the deeds, the plan[s], and the circumstances attendant to, and following, the establishment of the [Hyannis Park] subdivision," the judge correctly concluded that "the

plaintiffs satisfied their burden of proving that an implied easement was intended with respect to the [beach]." *Id.* at 458.[5]

2. *Extinguishment of the easement and the trust's knowledge thereof.* The trust argues that the judge erroneously concluded, after trial, that the implied easement was not extinguished and that the trust was not a bona fide purchaser without knowledge of the easement. We accept the judge's findings unless they are clearly erroneous, and review his legal conclusions de novo. *Rogel* v. *Collinson,* 54 Mass. App. Ct. 304, 311 (2002).

There was no error in the judge's findings of facts or conclusions of law that the plaintiffs' easement was not extinguished. The judge heard evidence that several of the plaintiffs have continuously used the beach in front of the trust's property since the trust's predecessors in title purchased it, and the trust presented no evidence of the plaintiffs' intent to abandon the easement. See *Boston Elev. Ry.* v. *Commonwealth,* 310 Mass. 528, 571 (1942), and cases cited ("intention to abandon is an important factor" in deciding whether an easement has been abandoned). Nor did the trust present evidence that its acts "have rendered the use of the easement practically impossible for the period required for prescription," such that the easement was extinguished. *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.,* 276 Mass. 153, 159 (1931). There was evidence that the trust has failed to consistently or effectively expel others from using the beach, of which the plaintiffs and the trust's predecessors in title have made continuous use. Because the trust's occupation of the land was not irreconcilable with the rights of the plaintiffs, it "is not deemed to be adverse and therefore does not extinguish [the plaintiffs'] rights." *Id.* at 158.[6]

---

[5]We note that public use of the undivided beach area was also part of Security's marketing scheme, whereby it advertised all lots in the Hyannis Park subdivision as "Shore lots" where "the water is very warm and for bathing cannot be excelled." The advertisements were widely distributed for a number of years, and they made it clear that the existence of the open and accessible beach area "was deemed an important feature of the scheme for selling lots." *Attorney Gen.* v. *Abbott,* 154 Mass. 323, 325 (1891). Indeed, if Security "had announced, at the time of making the sales, that it reserved the right to cut up the open [beach area] into building lots, and to sell them after the [subdivision] should be established, it would no doubt have diminished the sales." *Id.* at 326.

[6]The trust's failure to establish exclusive possession also justifies the

Finally, the trust argues that it is not bound by the implied easement because it was a bona fide purchaser without knowledge thereof. However, it is undisputed that the trust's original deeds reference the 1892 plans showing the existence of the open beach area, and the judge could properly conclude "that every *purchaser* of a lot in the [Hyannis Park] subdivision [wa]s presumed to have reviewed the 18[9]2 plan[s] (which had been recorded) because it was referenced in the deed to his or her lot" (emphasis in original). *Reagan, supra* at 460. A review of the 1892 plans would have alerted the trust to the existence of the open beach area in the Hyannis Park subdivision, and should have prompted the trust to inspect the certificates of title of other Hyannis Park property owners. Such an inspection would reveal that none of the deeded lots included beach rights. The judge could reasonably infer from this evidence that the trust either knew or should have known that the plaintiffs had some interest in the common beach areas. See *Otis Power Co.* v. *Wolin*, 340 Mass. 391, 396 (1960) (Land Court judge's findings of fact "must stand if warranted on any view of the evidence and all inferences therefrom"). Because we can discern no error in the judge's findings or conclusions that Security intended to convey the waterfront lots in Hyannis Park subject to an implied

judge's decision declaring that the trust is not the fee owner of the beach in front of its property. While the trust was granted a default on its third-party complaint seeking a declaration that it owns the beach through adverse possession, entry of a default under Mass.R.Civ.P. 55(a), 365 Mass. 822 (1974), is not a judgment. *National Grange Mut. Ins. Co.* v. *Walsh*, 27 Mass. App. Ct. 155, 156 n.2 (1989). Upon entry of a default under Mass.R.Civ.P. 55, "the factual allegations of a complaint are accepted as true and recovery may be granted where those facts are sufficient to establish a cognizable claim." *Adoption of Hanna*, 33 Mass. App. Ct. 542, 545 (1992). Although the trust's third-party complaint alleges that it has "actually, openly, exclusively and under a claim of right utilized" the beach in front of its property for at least twenty years, no other facts are alleged in the third-party complaint to support the contention that its possession has been exclusive. The judge was not required to accept "legal conclusions cast in the form of factual allegations," *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000), and the trust bore the burden of proving each of the elements necessary to establish title by adverse possession. *Lawrence* v. *Concord*, 439 Mass. 416, 421 (2003). Because the trust failed to do so, it was not entitled to a default judgment declaring it the fee owner of such land. See *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964) ("Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years").

easement for the nonwaterfront property owners to use the beach area in front of the trust's property, and because the trust failed to establish that its use of the beach in front of its property was exclusive and therefore adverse, the judgment dated December 22, 2010, is affirmed.

*So ordered.*