NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-739

KEVIN T. MCLAUGHLIN

vs.

DUANE R. BONLIE, trustee,[1] & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants, as trustees of the 590 Condominium Trust ("the trust"), appeal from a judgment of a Superior Court judge that (1) declared that the property at 183 Bradford Street in Provincetown, now owned by the plaintiff, Kevin McLaughlin, enjoys the benefit of a prescriptive easement to pass over a pathway on the abutting property at 590 Commercial Street, and (2) enjoined the defendants from interfering with McLaughlin's use of this easement. The judge found that the prescriptive easement was established primarily by the actions of one Jimmy

---

[1] Of the 590 Condominium Trust.

[2] Jane E. Bloom, trustee of the 590 Condominium Trust. Jane Bloom is deceased.

Majestic, an abutter to the back of 590 Commercial Street and McLaughlin's predecessor in title, who regularly used the path beginning as early as 1959 and continuing for well over 20 consecutive years. Majestic used the path to cut through, from the back of his home at 283 Bradford Street, over to Commercial Street, from whence he would walk to a shop he owned in another part of town.

On appeal, the defendants argue that the judge's findings that a prescriptive easement had been established were both erroneous and inadequate. In particular, the defendants contend that the judge failed to make necessary subsidiary factual findings -- for example, regarding who the owners of 590 Commercial Street were at the time the easement was being established -- and also failed to address whether Majestic's use might have been "permitted" by those prior owners. As we discern no error in the judge's findings and conclusions that Majestic's use (as well as the use by others) satisfied the requisite elements to establish a prescriptive easement, we affirm the judgment of the Superior Court.

Background. 1. The use of the pathway. This case involves two parcels of land in Provincetown, known as 283 Bradford Street ("283 Bradford") and 590 Commercial Street ("590 Commercial"). 283 Bradford fronts on Bradford Street, and is presently owned by the plaintiff McLaughlin. 590 Commercial

fronts on Commercial Street, and contains a condominium managed by the defendant 590 Condominium Trust, an association of unit owners.  283 Bradford Street and 590 Commercial Street are backyard neighbors -- that is, they share a common rear boundary line.  Bonlie, the defendant, is a trustee of the 590 Condominium Trust; the defendant Jane Bloom also served as a trustee until her death in 2022.

The pathway at issue runs along one side of the 590 Commercial property, and allows persons to travel from the back of 283 Bradford over the 590 Commercial Street property to Commercial Street, where there is a gate.  The pathway is approximately fifty feet long and quite narrow, and is made of wood until it turns into brick near Commercial Street.

The plaintiff McLaughlin proved the prescriptive easement not through his own actions, but primarily through the actions of Majestic, who purchased 283 Bradford in 1955 as a joint tenant.  Because Majestic died in 2014, well before trial, the plaintiff proved Majestic's actions through the testimony of several witnesses who knew Majestic, and were familiar with the property and Majestic's use of it over the years.

The key witness was Richard Fowler, an Episcopal clergyman who met Majestic in 1959 and formed a friendship with him that lasted until Majestic's death.  Fowler testified that he visited Majestic at least three times a year from 1959 to 2014, usually

3

during the summertime.  During these visits Fowler would walk with Majestic almost daily across the pathway through 590 Commercial (until Majestic became infirm, around 2012), in order to reach Commercial Street.  No one objected to Fowler and Majestic's use of the path.  The trial judge credited Fowler's testimony, and relied on it.

Fowler's testimony was corroborated, in part, by the testimony of James McNulty, who moved into 586 Commercial Street in 1971, at age 9.  586 Commercial Street is the property adjacent to both 283 Bradford and 590 Commercial; while living there, McNulty had a direct view of the pathway, through a window facing 283 Bradford.  McNulty lived at 586 Bradford until 1998, with the exception of one year, 1981.  He was friendly with Majestic and Majestic's roommate, a Mr. Simmons; McNulty was also friendly with the occupant of 590 Commercial, whom he called "Mary Main."[3]  As a young boy, McNulty helped Mary Main, for example, by bringing seaweed from the beach, to spread in her gardens at 590 Commercial.  While living in and around 586 Commercial, McNulty observed Majestic use the pathway "fairly regular[ly]" to access Commercial Street.  McNulty also observed Mr. Simmons use the pathway on occasion to access the beach.

---

[3] The record is not clear as to whether "Mary Main" is the same person as Mary Mowery, from whom Eldred Mowery bought 590 Commercial in 1984 or 1985.

4

Furthermore, McNulty saw Jack,[4] Majestic's partner, use the pathway as well, after Jack arrived in the mid-1970s. McNulty himself used the path, stating that he thought that he had "implied" permission to do so from Mary Main.

The trial judge also gave "significant weight" to the testimony of Dorothy Mowery, who moved into 590 Commercial in 1984 or 1985 and lived there until 1992 or 1993. Dorothy Mowery's husband, Eldred Mowery, bought 590 Commercial from his ex-wife, Mary Mowery. Dorothy Mowery's testimony was consistent with Fowler's and McNulty's. She understood the pathway to be "communal property." She saw Majestic and Simmons use the right of way, and saw Simmons sweep the way in the evenings.

Majestic died in 2014, and his trust transferred 283 Bradford to James Turner and Tony Sampson, friends of his. Turner and Sampson in turn sold 283 Bradford to McLaughlin in August 2014.

2. The dispute. Sometime in 2015, defendant Bonlie confronted renters from 283 Bradford who were using the pathway. The renters told Bonlie that McLaughlin had told them they could use the path. Bonlie asked the renters not to use the path. The defendants then told McLaughlin by letter that the use of

---

[4] Jack Hannon held title to 283 Bradford as joint tenants with right of survivorship with Majestic from October 1978 to August 2001, at which point he sold his interest to Majestic.

5

the path by the renters was trespassing. McLaughlin testified that the defendants then closed off the pathway by a fence with a locked gate.

In 2016, McLaughlin filed a complaint in Superior Court against Bonlie and Bloom as trustees, seeking a declaratory judgment that his property benefitted from an easement by prescription over 590 Commercial, and also seeking an injunction preventing the defendants and unit owners at the 590 Condominium from interfering with the use of the pathway by McLaughlin and his tenants.[5] The judge conducted a bench trial in October 2022. In April 2024, the judge issued an order declaring that McLaughlin acquired a prescriptive easement over the pathway at 590 Commercial. The judge accompanied his order with findings of fact and rulings of law, which included, inter alia, that "the use of the walkway located on 590 was continuous and uninterrupted beginning in 1959, that it was open and notorious, and that it was adverse to the title holder(s) of 590 Commercial Street for a period of not less than twenty years beginning in 1959." The judge ruled that the prescriptive easement was appurtenant to Majestic's property at 283 Bradford, such that when the property was transferred upon Majestic's death, the

---

[5] Defendant Bonlie was also named as a defendant in his individual capacity, along with Noe Reyes d/b/a Reyes Landscaping P-Town; the claims against Bonlie individually and Reyes were dismissed by stipulation.

easement passed with title to the land.[6]  Judgment entered for

McLaughlin and the defendants appealed.

Discussion.  To establish an easement by prescription,

McLaughlin was required to show, by clear proof, use of the

pathway by Majestic (or others at 283 Bradford) that was open,

notorious, adverse to the owner, and continuous for a period of

no less than twenty years.  See G. L. c. 187, § 2; Boothroyd v.

Bogartz, 68 Mass. App. Ct. 40, 43-44 (2007).  "The nature and

the extent of occupancy required to establish a right by adverse

possession [or by prescription] vary with the character of the

land, the purposes for which it is adapted, and the uses to

which it has been put."  Barnett v. Myerow, 95 Mass. App. Ct.

730, 738 (2019), quoting LaChance v. First Nat'l Bank & Trust

Co. of Greenfield, 301 Mass. 488, 490 (1938).  The claimant

bears the burden of proof as to each element of a prescriptive

easement.  Boothroyd, supra at 44.

---

[6] The defendants have not contested this ruling.  The conveyance of a dominant estate automatically conveys an appurtenant easement unless otherwise stated in the deed.  See G. L. c. 183, § 15.  An easement is appurtenant to an estate "when it is created to benefit and does benefit the possessor of the land in his use of the land."  Denardo v. Stanton, 74 Mass. App. Ct. 358, 361 (2009), quoting Schwartzman v. Schoening, 41 Mass. App. Ct. 220, 223 (1996).  There is a general presumption in favor of appurtenant easements instead of easements in gross, or personal easements.  See Denardo, 74 Mass. App. Ct. at 361. Thus, "[a]n easement is not presumed to be personal unless it cannot be construed fairly as appurtenant to some estate."  Id., quoting Schwartzman, supra.

7

1. Findings as to the elements of a prescriptive easement. The defendants argue that the judge erred in finding that Majestic's use between 1959 to 1984 was continuous, open and notorious, and adverse. Specifically, the defendants argue that the evidence at trial showed intermittent rather than continuous use; that the plaintiff did not show that Majestic's use ever put Mary Main, an owner of the 590 Commercial property during the prescriptive period, on notice; and that Majestic's use was permissive, rather than adverse. As noted, the trial judge addressed the prescriptive easement elements in turn, and found that the evidence had proved each of them. Whether the elements of a prescriptive easement have been sufficiently shown are generally questions of fact, see White v. Hartigan, 464 Mass. 400, 414 (2013), or mixed questions of law and fact, see Houghton v. Johnson, 71 Mass. App. Ct. 825, 836 (2008) (applying law to facts). We review a judge's findings that the elements of a prescriptive easement have been met for clear error, see White, supra, and his legal conclusions de novo. See Leahy v. Graveline, 82 Mass. App. Ct. 144, 149 (2012).

a. Continuous use. Relying on the testimony of Fowler, McNulty, and Dorothy Mowery, the trial judge found that Majestic's use was continuous for a period of not less than twenty years beginning in 1959. The defendants argue that this finding was clearly erroneous because the testimony at trial,

8

including Fowler's, showed only sporadic and intermittent use of the walkway by Majestic, and that evidence of sporadic use is not sufficient to meet the requirement of continuousness. See, e.g., Boothroyd, 68 Mass. App. Ct. at 45. They argue, for example, that Fowler's testimony showed no more than that Majestic used the pathway for three weeks every summer. This argument is unavailing.

To acquire an easement by prescription, a claimant's use must be continuous, that is, "repeated acts of use, of such a character and at such intervals, as afforded a sufficient indication to the owner of the land that the right of way was claimed against him." Bodfish v. Bodfish, 105 Mass. 317, 319-320 (1870). Under the case law, constant use is not required, Id. at 319; rather what must be shown is "continuity of possession and enjoyment of an easement" that is unbroken. Boothroyd, 68 Mass. App. Ct. at 45, quoting Pollard v. Barnes, 2 Cush. 191, 199 (1848). Continuity can be proven by circumstantial evidence. Bodfish, 105 Mass. at 319.

The trial judge found from the witness testimony adduced at trial, including Fowler's testimony, that:

> "[I]t is reasonable to infer that Majestic did walk along the walkway to access Commercial Street, then on to his shop. Likewise, it is reasonable to infer Majestic did so on the days the shop was open, as well as for general access to Commercial Street for other reasons such [as] shopping or general access to Commercial Street and its offerings."

9

These findings of fact were based on reasonable inferences from the evidence, and were not clearly erroneous. See White, 464 Mass. at 414. Majestic did not have a car, and owned a shop on Commercial Street in another part of town. The evidence showed that Majestic would walk. Fowler testified that when he was vacationing with Majestic, which he did three times a year starting in 1959, they would use the pathway "almost daily" to access Commercial Street, and that they did so every time he visited. McNulty additionally testified that he saw Majestic, Simmons, or their guests use the pathway "fairly regular[ly]," and Dorothy Mowery testified similarly. The judge was not required to evaluate this evidence in a straightjacket, limited only to the dates on which a witness actually saw Majestic and others use the path. Rather, from this evidence the judge could draw the reasonable inference that Majestic used the pathway "on the days the shop was open, as well as for general access to Commercial Street for other reasons such [as] shopping or general access to Commercial Street and its offerings," and that this use by Majestic (and others from 283 Bradford, including Mr. Simmons) was sufficiently continuous from at least 1959 through 1979. The judge's finding that this constituted continuous use during the requisite 20-year period thus was not clearly erroneous.

b.  Open and notorious.  The trial judge further found that the use by Majestic was open and notorious.  The judge stated that "Majestic made no attempt to conceal his use" and that "[d]ue to the closeness of the home on 590 to the walkway, Majestic's passing and repassing along the walkway and opening and closing the white picket gate leading in or out, was sufficient to put a reasonable property owner on notice of his use."  The defendants counter that this finding was erroneous, because one of the former owners, Mary Main, was blind, and Majestic's use was not of a nature to put a blind person on notice that Majestic was using the pathway.  This argument also fails.

The requirement that the use be open and notorious to establish a prescriptive easement "is intended only to secure to [owners] a fair chance of protecting" themselves.  White, 464 Mass. at 417, quoting Foot v. Bauman, 333 Mass. 214, 218 (1955). "The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land."  Boothroyd, 68 Mass. App. Ct. at 44, quoting Tinker v. Bessel, 213 Mass. 74, 76 (1912). "To be 'open,' the use must be without attempted concealment.'  Boothroyd, 68 Mass. App. Ct. at 44.  To be "notorious," the use "must be sufficiently pronounced so as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of

11

supervision over the property." Id.  The use does not have to be actually known to the landowner, so long as the use is such that the landowner may be deemed to be on constructive notice. Id.

Here, there was no clear error in the judge's finding that Majestic's use was open, in that he did not attempt to conceal it.  The evidence showed that Majestic was easily observable-- and that he was in fact observed--when walking along the pathway.  Furthermore, the judge's finding of notoriety, considering the nature of Majestic's use (walking over a pathway that was in close proximity to 590 Commercial) was not clearly erroneous.

The defendants' argument that openness was not shown because Mary Main was blind is without merit, where McLaughlin did not have to prove that the former owners had actual notice of Majestic's use of the pathway, where the use was of a character to put the landowner at least on constructive notice, and where there in any event was evidence that Mary Main was present at the property and used her backyard for gardening. See Boothroyd, 68 Mass. App. Ct. at 44-45.  The judge did not err in finding that the use was open and notorious.

c.  Adverse.  The trial judge also found that Majestic's use was adverse.  The defendants challenge this finding as well, positing that Mary Main allowed Majestic to use the pathway as a

12

friendly accommodation.  The defendants point to evidence that Mary Main was friendly with Majestic, but their evidence stops there--indeed, the defendants point to no evidence that Mary Main even spoke to Majestic about the use.

"To be adverse, the use must be made under a claim of right."  White, 464 Mass. at 418.  The granting of permission is inconsistent with adverse use.  See Ryan v. Stavros, 348 Mass. 251, 263 (1964).  However, if a party shows open, notorious, and continuous use of the land of another for twenty consecutive years, the law engages in a presumption that such use was adverse and conducted under a claim of right.  Smaland Beach Ass'n v. Genova, 94 Mass. App. Ct. 106, 115 (2018); Daley v. Swampscott, 11 Mass. App. Ct. 822, 827 (1981).  In those circumstances, the burden shifts to the landowner to show the use was permitted.  Smaland Beach Ass'n, 94 Mass. App. Ct. at 115.  Moreover, mere acquiescence in the use of another does not constitute permission.  Rotman v. White, 74 Mass. App. Ct. 586, 590 (2009).

Here, given the trial judge's findings of open, notorious, and continuous use for twenty years, Majestic's use of the pathway was presumed to be adverse, and McLaughlin thus was not required to prove that the use was not permitted.  Where there was no evidence adduced at trial to show that Majestic's use was

13

permissive, the judge did not err in finding that his use was adverse.

The defendants point to McNulty's testimony that the neighbors were friendly with each other, and that McNulty thought that Mary Main had given him (McNulty) implied permission to use the pathway.  This testimony, however, does not speak with any specificity to whether Majestic's use was permissive, and such a conclusion certainly was not required.  See Totman v. Malloy, 431 Mass. 143, 146 (2000) (declining to create a presumption or inference of permissive use among close family members for purposes of adverse possession).  Rather, the evidence was such that the judge's finding of adversity was well supported and not clearly erroneous.  And the judge of course was not required to infer from McNulty's testimony (that he believed he (McNulty) had implied permission to use the pathway) that Majestic's use was permissive.[7]

2.  Adequacy of subsidiary findings.  The defendants also argue that the judge failed to make adequate subsidiary findings

_____

[7] As the trial judge's finding that Majestic's use was adverse during a twenty year period starting in 1959 was not clearly erroneous, the defendants' argument that Majestic's use was permissive starting in 1984 has no bearing on the determinative issue.  We note, however, that Dorothy Mowery, the occupant of 590 Commercial starting in 1984 or 1985 and owner by 1987, testified that she understood that Majestic and Simmons had a right of way over the property, and that she could not prevent them from using the right of way.

14

to support the ultimate finding of an easement by prescription. Specifically, the defendants argue that the judge failed to make findings as to the identities of the owners of 590 Commercial prior to Dorothy Mowery (whose husband took ownership in 1984 or 1985 and transferred it to both of them as tenants by the entirety in 1987), and specifically whether those prior owners granted Majestic permission to use the path. The defendants further argue that without such subsidiary findings, the judge could not find that Majestic's use was adverse.

The judge, however, was not required to make such findings in the circumstances presented. As stated supra, continuous, open, and notorious use of an easement for twenty years creates a presumption of adversity. See Smaland Beach Ass'n, 94 Mass. App. Ct. at 115; Daley, 11 Mass. App. Ct. at 827. While such subsidiary findings may have been helpful, the judge was not required to make them when the evidence supported the judge's

findings of Majestic's open, notorious, and continuous use of the pathway for twenty years.[8]

Judgment affirmed.

By the Court (Vuono, Englander & Hodgens, JJ.[9]),

Clerk

Entered:   January 30, 2025.

---

[8] The defendants also argue that the judgment for McLaughlin on Count I of his complaint for declaratory judgment should be reversed because McLaughlin failed to prove that the trust is the owner of the land in question, and because McLaughlin did not join the individual unit owners.  This argument is unavailing.

The trust is the association of unit owners for the 590 Condominium, as reflected in the master deed.  As such, the trust has the authority by statute "[t]o conduct litigation and to be subject to suit as to any course of action involving the common areas."  G. L. c. 183A, § 10 (b) (4).  Accordingly, the trust is a proper defendant in a declaratory judgment action, such as the one here, which seeks to establish the existence of a prescriptive easement over the common areas of the condominium property.  Similarly, the trustees are evidently the individuals who erected the fence.  They also are proper defendants in an injunction action.  We note that the judgment operates against these defendants and their privies -- those whose interests were "adequately represented" and whom it would be fair to bind.  See Laramie v. Philip Morris USA, 488 Mass. 399, 405-406 (2021).

[9] The panelists are listed in order of seniority.