NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-458                                        Appeals Court


     SMALAND BEACH ASSOCIATION, INC.  vs.  ARTHUR F. GENOVA &
                          another.[1]


                       No. 17-P-458.

     Plymouth.     February 14, 2018. - September 25, 2018.

           Present:  Sullivan, Kinder, & Wendlandt, JJ.



Adverse Possession and Prescription.  Way, Private.  Easement.
     Deed, Description.  Real Property, Adverse possession,
     Easement, Deed, Boundary, Littoral property, Riparian
     rights.  Practice, Civil, Failure to join party, Judgment
     notwithstanding verdict.  Evidence, Expert opinion.
     Witness, Expert.




     Civil action commenced in the Superior Court Department on
January 20, 2005.

     The case was heard in part by David A. McLaughlin, J., and
tried in part before Christopher J. Muse, J.; a motion for
judgment notwithstanding the verdict, filed on July 11, 2013,
was considered by Muse, J.; the entry of judgment was ordered by
him; and a motion to alter or amend the judgment was considered
by him.

_____

     [1] Patricia A. Genova.

Lee P. Alfieri for the plaintiff.

Joseph E. Kelleher, III, for the defendants.

WENDLANDT, J.  At issue are the rights of the plaintiff, Smaland Beach Association, Inc. (SBA), to use a portion of a sandy beach area abutting real property (Lot 18) owned by the defendants, Arthur and Patricia Genova.  Lot 18 is located in a neighborhood called Smaland, adjacent to Island Pond in Plymouth.  The Genovas' immediate neighbor to the east is SBA, which owns a largely unimproved lot (Lot 19).  Both parcels abut the sandy beach, which has been used for recreation by Smaland homeowners and their guests for decades.

For more than a dozen years, the Genovas and SBA have been warring over ownership of the portion of the beach abutting Lot 18, as well as use of the dock and boat ramp situated on that area.  Their battles have extended to additional fronts, including disputes about the Genovas' encroachment over the parties' shared side lot line and SBA's right to use a footpath behind the Genovas' cottage.

After bifurcated trials in the Superior Court (a bench trial, followed by a jury trial before a different judge), a judgment entered, declaring the parties' rights.  The parties have cross-appealed.

Factual background.  In 1931, a group of families primarily from Quincy purchased small parcels of real estate in close proximity to one another, situated between Little Sandy Pond Road and Island Pond in Plymouth.  The group established a neighborhood of summer camps they called Smaland.  Among the original Smaland owners was Anna Kristina Myrbeck, who obtained two parcels, "bounded and described" as "Lots #18-19 on a plan of 'Great Herring Shores, Unit B' drawn by A. L. Wheeler, dated Oct. 1, 1926, duly recorded with Plymouth County Deeds" (hereinafter, the Unit B plan[2]).  The 1931 deed from Albert K. Kendrick and Louis B. Hall[3] to Myrbeck contains no metes and bounds descriptions.

Crescent Road.  Lots 18 and 19 directly abut each other, sharing a side lot line.  They also directly abut Crescent Road, a way that connects at both ends to Little Sandy Pond Road. Crescent Road runs roughly parallel to the shore of Island Pond,

---

[2] The Unit B plan, a copy of which is reproduced in the appendix to this opinion, is titled "Plan of Camp Lots at Great Herring Shores:  The Cape's Master Camp Site," and bears a stamp indicating that it was recorded at the Plymouth County Registry of Deeds on August 3, 1927.

[3] In 1926, the common grantors (Kendrick and Hall) acquired a large parcel bounded easterly by Great Herring Pond and extending westerly across Island Pond, as set forth in the locus map appearing in the upper right hand corner of the Unit B plan. This large parcel was subdivided into lots included on several plans, including the Unit B plan.

and for a portion of its length there are camp lots on both of its sides. In the location directly in front of Lots 18 and 19, however, the road hugs the shore of the pond, and camp lots exist only on the upland side of the road. Thus, looking at the Unit B plan, it appears that Lots 18 and 19 are situated directly across Crescent Road from the pond. On the ground, however, the portion of Crescent Road that passes directly in front of Lots 18 and 19 is not laid out as a road, and exists, instead, as a sandy beach or grassy area.

SBA's property. Lot 19 is partially comprised of a hill, with rustic stairs, connecting cottages situated uphill from Lot 19 with the waterfront below it. Lot 19 was owned (in common with Lot 18) by Myrbeck from 1931 until 1934 when she conveyed it to Axel Ludvigson. Ludvigson owned Lot 19 until 1958. Lot 19, and the portion of Crescent Road abutting it, have been dedicated to communal use for recreation by homeowners in Smaland and their guests since at least the 1940s.[4]

In October, 1958, Ludvigson conveyed Lot 19 to the three trustees of a newly formed trust, which held Lot 19 for certain named beneficiaries (trust beneficiaries) who were "owners of land bordering on the Trust property, or in the immediate

---

[4] At some point, a bandstand or dance floor was installed either on Lot 19 or on the directly adjacent portion of Crescent Road.

vicinity, known as 'Smaland.'"  In 1971, the trust was dissolved, and Lot 19 was conveyed to SBA, which was incorporated pursuant to G. L. c. 180, with its stated purpose being "[t]o maintain and govern the property known as the Smaland Beach area."

The Genovas' property.  Also in 1958, Myrbeck conveyed Lot 18 to Sven Gunnar Myrbeck (Sven), and by 1961, he also had acquired Lot 44, which is directly behind (and uphill from) Lot 18.  In 1975,[5] the Genovas bought Lots 18 and 44 from Sven as a summer retreat.  Prior to making the purchase, the Genovas were elected members of SBA.  Over the many years that the Genovas have owned Lots 18 and 44, they have made numerous improvements to the cottage on Lot 18, including a small addition that encroaches on SBA's land.

The footpath.  At some time dating as far back as 1946, a system of footpaths was established in the neighborhood.  The primary path runs horizontally across the neighborhood (approximately parallel to the pond) tracing a line starting in the west, where it bisects Lots 14 and 39, and running east, ending where it bisects Lots 19 and 47.  A portion of this primary path crosses the Genovas' land (the footpath).

---

[5] Well before 1975 (the date is not revealed in the record), Lot 18 was improved with a summer cottage.

Procedural history.  SBA filed its verified complaint in January, 2005, seeking to ascertain the boundaries of the Genovas' front property line (Lot 18, as it bounds on Crescent Road), asserting a claim that the Genovas' expanded cottage encroaches on Lot 19, and seeking to enjoin the Genovas from interfering with SBA's access to the footpath, boat ramp, and dock.  The Genovas counterclaimed, requesting, inter alia, a declaratory judgment concerning the parties' respective rights in Crescent Road and the footpath, and the Genovas' rights through adverse possession or an easement in the area of their encroachment onto Lot 19.

In May, 2007, a Superior Court judge issued a bifurcation order, and the following month, the case proceeded to a bench trial on the issue of ownership of the portion of Crescent Road abutting Lot 18.  In April, 2009, the judge conducting the bench trial (first judge) concluded that the Genovas own a fee simple interest in the portion of Crescent Road abutting Lot 18 through the entire width of the way, as well as a portion of the adjacent pond bed to the midpoint of Island Pond.  As set forth in greater detail infra, the first judge also determined the angle at which the Genovas' and SBA's shared lot line extends into Crescent Road.

Following a jury trial before a different judge (trial judge) in June, 2013,[6] the jury found that SBA had obtained (i) a prescriptive easement in the footpath and (ii) title by adverse possession to both the boat ramp and the land under the dock.[7] The jury also found that the Genovas had obtained by adverse possession the title to the strip that encroached on Lot 19. The trial judge reserved to himself the determination of the northwesterly boundary of Crescent Road and took expert testimony on the question, ultimately declaring that the boundary, in the area of Lots 18 and 19, is the mean low water mark of Island Pond.

In July, 2013, the Genovas filed a motion for judgment notwithstanding the verdict (judgment n.o.v.). The trial judge agreed that, rather than establishing adverse possession to the dock and boat ramp, SBA had acquired only a prescriptive easement; he denied relief as to the finding regarding a prescriptive easement in the footpath. Final judgment entered

---

[6] Prior to the jury trial, a Superior Court judge disqualified SBA's counsel because he had become a necessary witness. On an interlocutory appeal, the Supreme Judicial Court vacated that order. Smaland Beach Ass'n v. Genova, 461 Mass. 214, 231 (2012).

[7] Contrary to the Genovas' argument, the trial judge did not abuse his discretion in allowing SBA to try its adverse possession claim to the jury. See Afarian v. Massachusetts Elec. Co., 449 Mass. 257, 269 (2007).

in August, 2013, incorporating the findings of both the bench trial and the jury trial.  A subsequent motion by the Genovas to alter or amend the judgment was denied, and the parties timely filed their cross appeals.

Discussion.  1.  Application of G. L. c. 183, § 58.  SBA appeals from the first judge's determination that the Genovas and SBA each own a fee simple interest in the entire width of Crescent Road.  SBA maintains that proper application of G. L. c. 183, § 58[8] (the derelict fee statute) results in the parties owning the fee in Crescent Road only to its mid-point.  We agree.

To begin, both Lots 18 and 19 abut Crescent Road -- a way. Moreover, relying principally on Inhabitants of Lynnfield v.

---

[8] The derelict fee statute provides, in relevant part:

"Every instrument passing title to real estate abutting a way, whether public or private, [or] watercourse . . . shall be construed to include any fee interest of the grantor in such way [or] watercourse . . . unless (a) the grantor retains other real estate abutting such way [or] watercourse . . . in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way [or] watercourse . . . as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way [or] watercourse . . . between the division lines extended, the title conveyed shall be to the center line of such way [or] watercourse . . . or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line" (emphasis added).  G. L. c. 183, § 58.

Inhabitants of Peabody, 219 Mass. 322 (1914), the first judge determined that Island Pond was a privately owned Great Pond.[9] It follows that, when Kendrick and Hall granted Lots 18 and 19 to Myrbeck, they retained real estate (the pond bed of Island Pond) on the side of Crescent Road opposite from Lots 18 and 19.[10] Compare Paine v. Woods, 108 Mass. 160, 169-170 (1871); Inhabitants of Lynnfield, supra at 336. Applying the derelict fee statute to this conveyance (wherein the grantor retained real estate abutting and on the other side of the way), the title conveyed to Myrbeck was only to the center line of Crescent Road in the absence of express evidence in the instrument of a contrary intent in the conveyance. G. L. c. 183, § 58.

The Genovas contend such an intent derives from the usual presumption that a grant of land bounded by a pond includes a portion of the pond bed. See Paine, 108 Mass. at 169 ("The general rule of construction of all grants of land bounded by water of any kind is now well established, that, unless qualified by restrictive words, they pass the soil towards the centre of the water, as far as the grantor owns"). However,

---

[9] The parties do not appeal from this finding, which is binding only on the parties and their privies.

[10] See note 2, supra.

Lots 18 and 19 do not abut Island Pond; instead, the lots abut a way -- namely, Crescent Road. Thus, the grant of Lots 18 and 19 to Myrbeck did not convey the pond bed on the other side of Crescent Road. See Kane v. Vanzura, 78 Mass. App. Ct. 749, 754 (2011) (grant of the upland parcel bounded by a way did not convey the tidelands on the other side of the way). Instead, Kendrick and Hall retained ownership of the pond bed. Accordingly, Kendrick and Hall also retained the fee to the center line of the pondward half of Crescent Road abutting their retained land.[11] See G. L. c. 183, § 58; id. at 755.[12]

2. The course of the parties' shared side lot line as it extends into Crescent Road. We turn to the Genovas' appeal from the first judge's determination of the angle at which the Genovas' and SBA's shared lot line extends into Crescent Road. During the bench trial, SBA asserted that the derelict fee

---

[11] The Genovas' other arguments regarding the fee interest in Crescent Road also lack merit. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[12] Our conclusion that Kendrick and Hall retained ownership of the pond bed and the pondward half of Crescent Road has repercussions for a number of issues raised by the parties. As will become clear throughout our opinion, Kendrick and Hall (or their heirs) were necessary parties for the adjudication of issues affecting their retained interest. Thus, any declaration in the judgment addressing such issues must be vacated. See Uliasz v. Gillette, 357 Mass. 96, 105 & n.8 (1970); Kitras v. Aquinnah, 64 Mass. App. Ct. 285, 290 (2005); Kane, 78 Mass. App. Ct. at 757-758 & n.16.

statute requires that the side lot line continue into the way along the same directional course it runs between the lots. The Genovas contended that the side lot line continues into the way at right angles to the centerline of the way. The first judge split the difference, deciding that the Genovas' and SBA's shared side lot line should be extended into Crescent Road at an angle precisely in the middle between the angle proposed by the Genovas and the angle proposed by SBA. The Genovas have appealed from this aspect of the judgment, which we review de novo. See New England Forestry Found., Inc. v. Assessors of Hawley, 468 Mass. 138, 149 (2014) ("We review conclusions of law, including questions of statutory construction, de novo"); Allen v. Allen, 86 Mass. App. Ct. 295, 298 (2014) (reviewing findings of fact for clear error, but conclusions of law de novo).

We are guided in our analysis by the long-established presumption[13] that, where the shore of a river is relatively

---

[13] This presumption was established before adoption of the derelict fee statute; there is no indication in the derelict fee statute of an intent to alter this common-law rule. See Pineo v. White, 320 Mass. 487, 491 (1946) ("A statute is not to be interpreted as effecting a material change or a repeal of the common law unless the intent to do so is clearly expressed"). See also Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 454 (2007) ("We consider the statute in light of the common law"); Tattan v. Kurlan, 32 Mass. App. Ct. 239, 243 (1992) (construing derelict fee statute as incorporating common-law principle of presumed intent).

straight, abutting owners' title to the riverbed is delineated by extending the shared lot line at right angles to the centerline of the river, unless the grantor expressly states otherwise.[14]  See Knight v. Wilder, 2 Cush. 199, 208-209 (1848). See also Tappan v. Boston Water Power Co., 157 Mass. 24, 30 (1892) ("[T]he division is effected by drawing lines at right angles from the termini of the side lines on the shore to and at right angles with the thread of the stream").  The purpose of this presumption is "to give to each riparian proprietor an equal share of the bed of the river, in proportion to his line on the margin of the stream, together with that portion of the bed of the stream, which lies opposite, in front of, or adjacent to, his upland."  Knight, 2 Cush. at 209-210.

We see no reason why this same presumption should not apply to ways, especially in view of the fact that the derelict fee statute applies equally to real estate abutting ways and watercourses.  Accordingly, where a grantor passes title to real estate abutting a way and retains other real estate abutting the way, the grantee's fee in the way is determined by extending the

---

[14] A similar presumption is generally applied to division of saltwater flats.  See Rust v. Boston Mill Corp., 6 Pick. 158, 168-169 (1828); Gray v. Deluce, 5 Cush. 9, 12-13 (1849); Wonson v. Wonson, 14 Allen 71, 79 (1867); Stone v. Boston Steel & Iron Co., 14 Allen 230, 234 (1867); Tappan v. Boston Water Power Co., 157 Mass. 24, 29-31 (1892).

granted parcel's side lot lines into the way at right angles to the centerline of the way.[15]  Thus, Crescent Road is divided as between Lots 18 and 19[16] by extending their shared lot line at right angles to the centerline of the road, and the judgment must be modified accordingly.[17]

3.  SBA's prescriptive easement over the dock, footpath, and boat ramp.  a.  Pondward half of Crescent Road.  As set forth supra, the pondward half of Crescent Road and the adjacent pond bed are owned by Kendrick and Hall (or their heirs, successors, and assigns), none of whom are parties to this action.  Therefore, there has been a failure to join necessary parties, and, to the extent the judgment purports to declare the parties' rights in the pond bed, the seasonal dock, and the

---

[15] Here, Crescent Road proceeds on a relatively straight line where it passes Lots 18 and 19; accordingly, we see no basis (and SBA cites none) to depart from this well-established presumption.

[16] As the owners of Lot 17 are not parties to this case, we must vacate the judgment to the extent it declares the location of the dividing line in Crescent Road between Lot 17 and Lot 18. Compare note 12, supra.

[17] We leave it to the parties to determine what, if any additional steps are required to determine the course of this line.  Both parties appear to suggest that additional surveying or computation is required to determine the location of the dividing line perpendicular to the centerline of Crescent Road.

portion of the boat ramp that lies on the pondward half of Crescent Road, it must be vacated.[18]  See note 12, supra.

b.  Permissive use.  SBA's claim to a prescriptive easement over the footpath and the portion of the boat ramp (however small) on the landward half of Crescent Road belonging to the Genovas[19] requires "clear proof of a use of the land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years."  Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 44 (2007).  See G. L. c. 187, § 2.  On appeal, the Genovas contend that the trial judge erred in denying so much of their motion for judgment n.o.v. as asserted that SBA failed to establish a prescriptive easement over the footpath and the boat

---

[18] Contrary to the Genovas' argument, failure to join necessary parties is not a proper ground for dismissal unless the court lacks personal jurisdiction over the unnamed parties. See Mass. R. Civ. P. 21, 365 Mass. 767 (1974).  See also Sadler v. Industrial Trust Co., 327 Mass. 10, 13 (1951).

[19] On appeal, the Genovas appear to suggest that SBA's claim to a prescriptive easement to use the boat ramp is moot because such use is not inconsistent with SBA's undisputed passageway easement over Crescent Road.  This position is at odds with the Genovas' apparent position at trial.  Because the Genovas do not concede unambiguously that SBA may use the boat ramp, we address the merits of their arguments challenging the declaration that SBA has a prescriptive easement in the boat ramp.

ramp because, according to the Genovas, SBA's use of those areas was permissive.[20]

A judge's task in considering a motion for judgment n.o.v. is, "taking into account all the evidence in its aspect most favorable to the [nonmovant], . . . to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the [nonmovant]."  OMV Assocs., L.P. v. Clearway Acquisition, Inc., 82 Mass. App. Ct. 561, 565 (2012), quoting Phelan v. May Dep't Stores Co., 443 Mass. 52, 55 (2004).  "The judge considers whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn' in the [nonmovant's] favor."  OMV Assocs., supra, quoting Poirier v. Plymouth, 374 Mass. 206, 212 (1978).  We apply the same standard on appeal.  OMV Assocs., supra.

SBA presented substantial evidence of the use of the footpath, starting at least as far back as the 1940s and continuing until the Genovas blocked the path with a fence in

---

[20] SBA claims that the Genovas waived the argument that use of the footpath was permissive by not including it in their directed verdict motion.  Because SBA did not object to the Genovas' inclusion of this argument in their motion for judgment n.o.v., however, SBA has waived the right to object on appeal. See Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 583-584 (1996).

2004.[21]   There was also evidence from which the jury could infer

use of the boat ramp by SBA's members and predecessors as far

back as the 1950s and 1960s (when it was a rocky or sandy ramp)

through 2004.

This longtime continuous use, spanning more than twenty

years, triggered the presumption that the use was nonpermissive.

See Houghton v. Johnson, 71 Mass. App. Ct. 825, 836 (2008),

quoting Ivons-Nispel, Inc. v. Lowe, 347 Mass. 760, 763 (1964)

(where "there has been the use of an easement for twenty years

unexplained, it will be presumed to be under claim of right and

adverse, and will be sufficient to establish title by

prescription . . . unless controlled or explained").  See also

White v. Chapin, 12 Allen 516, 519-520 (1866).  Accordingly, the

Genovas were required to overcome that presumption by showing

that the use was permissive.  See Daley v. Swampscott, 11 Mass.

App. Ct. 822, 827 (1981) ("Once the presumption arises, the

---

[21] Indeed, the Genovas did not apparently contest that the footpath was used by the Smaland community until at least 1982. Instead, the Genovas argued that any use of the footpath was terminated when, in May, 1982, SBA held its annual Memorial Day weekend meeting and told its members to stop using the path that went by one of its new member's patio.  However, the jury were not required to find on the Genovas' behalf in the face of ample evidence of the use of the footpath long after the 1982 annual meeting and continuing until the Genovas blocked the path with a fence in 2004.

landowner has the burden of rebutting it by showing that the use was permissive").

Whether a pattern of conduct and use suggests permission ultimately is a question of fact, which depends on the weight of the evidence, the credibility of the witnesses, and the reasonable inferences to be drawn therefrom; accordingly, it is best left to the jury. Here, the jury were not required to find that the Genovas met their burden to overcome the presumption that the longtime use of the footpath and boat ramp was nonpermissive. There was no evidence that any owner of either Lots 18 or 44, including the Genovas,[22] expressly gave permission to anyone to use the footpath; in addition, several SBA witnesses testified that they did not ask permission to use the footpath, using it under a claim of right.[23] With regard to the boat ramp, the only evidence of permissive use was Patricia Genova's testimony that on one occasion she gave permission to a non-SBA member to use the boat ramp. Accordingly, the evidence

---

[22] Although Arthur Genova testified that he found the late-night use of the footpath annoying when he first bought Lots 18 and 44 in the 1970s, he did nothing to stop anyone from using the path until 2004.

[23] Contrary to the Genovas' contention, the jury were not required to find that the use was permissive even though some witnesses agreed with the Genovas' counsel's characterization that they thought they had "permission" to use the path.

supports the jury's finding that the continuous use of the footpath and the boat ramp was nonpermissive.[24]

c. <u>Use attributable to SBA</u>.  Contrary to the Genovas' argument, the evidence was sufficient for the jury to find that the aforementioned continuous use was attributable to SBA and its predecessors.[25]  In particular, there was substantial evidence that the footpath and boat ramp were among the various amenities controlled by SBA, the use of which SBA restricted to its members (and their guests).[26]  For example, several

_____

[24] Nor did the communal and familial history of Smaland or the fact that Lot 19 was considered communal, servient property require that the jury find the use of either the footpath or the boat ramp permissive.  See, e.g., <u>Totman</u> v. <u>Malloy</u>, 431 Mass. 143, 146 (2000) (declining to "create a presumption or inference of permissive use among 'close' family members").

[25] As to use of the footpath by SBA's predecessors in interest, while there was no direct evidence as to either Myrbeck's or Ludvigson's use of the footpath, one SBA member and former board member testified that, in 1972, Ludvigson (who at that time had already conveyed out Lot 19, but owned at least one other lot abutting the footpath [Lot 41]) told the witness that she could use the entire footpath and was expected to maintain the portion of it that fronted her property (Lot 16). Substantial evidence also showed that the footpath was used frequently by trust beneficiaries for access to the beach and to various cottages during the time Lot 19 was held by the trust from 1958 to 1971.  The Genovas' argument that this usage of the footpath (through Lot 44) must have been permissive because the trust could not have acted adversely to its beneficiaries is belied by the parties' stipulation that the original trust beneficiaries did not include the owner of Lot 44.

[26] On appeal, the Genovas also argue that SBA's prescriptive easement claims were ultra vires because they fall outside the scope of the purpose set forth in SBA's articles of incorporation.  This argument was not presented in the Genovas'

witnesses testified about SBA's annual Memorial Day weekend events during which SBA required members to participate themselves (or to send others) to clean up the beach area, rake and bring plantings for the hill on Lot 19, rake and mow the neighborhood footpaths,[27] and install the dock for the season. These events coincided with SBA's annual meeting. One SBA member testified that he attended these Memorial Day clean-up events from 1969 (when Lot 19 was owned by the trust) to 1994.

The evidence regarding the boat ramp also permitted an inference that SBA controlled access. From 1980 through 2005, SBA maintained signage, including near the boat ramp, that the area was SBA's private property. SBA exercised control over improvements to the boat ramp. For example, in 1975, when the Genovas wanted to alter the sandy, rocky ramp, they sought permission and funds from SBA. SBA approved the alterations, at the expense of the SBA members (such as the Genovas) who were boat owners.[28] In 1985, the topic of paving the boat ramp was

motion for judgment n.o.v., and is waived. See Reckis v. Johnson & Johnson, 471 Mass. 272, 300 (2015).

[27] The Genovas acknowledge in their brief that SBA organized the maintenance of the neighborhood paths (including the footpath behind the Genovas' home) during Memorial Day weekend clean-up sessions in which SBA members participated.

[28] We reject SBA's argument that the trial judge erred in altering the jury's verdict regarding SBA's use of the boat ramp from a finding of adverse possession to a finding of prescriptive easement. The evidence was that the Genovas used

again considered by SBA.  This time SBA agreed to pave the ramp, funding a portion of the work so long as use of the ramp remained restricted exclusively to SBA members and guests.  In 1990, SBA installed a chain to prevent non-SBA members from using the ramp.  The chain was still in place in 2004.  The jury could infer from all of this evidence that the use of the footpath and the Genovas' boat ramp by SBA members was under the authority of SBA itself or its predecessors in interest.

4.  Gate on the footpath.  In his posttrial decision, the trial judge allowed the Genovas to erect an unlocked, hinged gate at both side boundaries of their property.  SBA claims the gate is an impermissible obstruction of the footpath.  However, SBA has not shown that the gate unreasonably interferes with its right of passage over the footpath.[29]  See Martin v. Simmons Props., LLC, 467 Mass. 1, 9 (2014), quoting Restatement (Third) of Property (Servitudes) § 1.2 comment d (2000) (Restatement) (A servient estate owner "retains the right to make all uses of the land that do not unreasonably interfere with exercise of the

---

and improved the boat ramp and, thus, SBA's use was not exclusive, as is required to obtain adverse possession.  See Ryan v. Stavros, 348 Mass. 251, 262 (1964).

[29] SBA also asserts that the judge should have required the Genovas to remove portions of a bunkhouse and retaining wall that, it argues, also impermissibly obstruct the footpath.  SBA points to no evidence, however, that either the bunkhouse or the retaining wall prevents passage over the footpath.

rights granted by the servitude").  See also <u>Ball</u> v. <u>Allen</u>, 216 Mass. 469, 472-473 (1914) (A servient owner is permitted to erect gates across an easement so long as they are "located and maintained as not unreasonably to interfere with the . . . privilege of passage").  Moreover, SBA has not shown any additional burden or frustration of the utility or purpose of the easement.  See <u>M.P.M. Bldrs., LLC</u> v. <u>Dwyer</u>, 442 Mass. 87, 90 (2004), quoting Restatement § 4.8(3) (A servient owner may relocate an easement so long as the change in location does not "[a] significantly lessen the utility of the easement, [b] increase the burdens on the owner of the easement in its use and enjoyment, or [c] frustrate the purpose for which the easement was created").

5.  <u>Admissibility of the Genovas' expert's plan concerning the location of Crescent Road</u>.  As we have noted, the trial judge reserved to himself the question of the northwesterly boundary of Crescent Road.  On appeal, SBA maintains that the trial judge erred in admitting the plan drawn by the Genovas' expert surveyor, Wayne Jalbert (Exhibit 2), which depicts the northwesterly sideline of Crescent Road as shown on the Unit B plan.  We review the judge's decision regarding admissibility for abuse of discretion.  See <u>Chan</u> v. <u>Chen</u>, 70 Mass. App. Ct. 79, 84 (2007); <u>Wodinsky</u> v. <u>Kettenbach</u>, 86 Mass. App. Ct. 825, 837, 838 (2015).  We review SBA's challenge to any legal

conclusion de novo, and findings of fact for clear error.  See Cavadi v. DeYeso, 458 Mass. 615, 624 (2011); Mercurio v. Smith, 24 Mass. App. Ct. 329, 331 (1987).

The judge did not abuse his discretion in admitting Exhibit 2.  Indeed, SBA does not quarrel with Jalbert's qualifications and does not argue that his testimony or plan was not based on sound, scientifically valid principles.  See Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994).  Instead, SBA's argument centers on its view that the Unit B plan is too rudimentary to be relied upon.

"A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed."  Wellwood v. Havrah Mishna Anshi Sphard Cemetary Corp., 254 Mass. 350, 354 (1926).  Where a deed conveys land "bounded and described, according to a plan, . . . [t]hese words are satisfied if the reference to the plan be taken to have been for purposes of boundary and description."  Williams v. Boston Water Power Co., 134 Mass. 406, 416 (1883).  See Boston Water Power Co. v. Boston, 127 Mass. 374, 376 (1879); Walker v. Boynton, 120 Mass. 349, 351 (1876).  Accordingly, because the deeds to Lots 18 and 19 describe the extent of the interest conveyed only by reference to the Unit B plan, that plan controls the location and size of those parcels as well as the

location of the road in relation to their land.  See Stearns v. Rice, 14 Pick. 411, 413 (1833) ("In applying descriptions to local objects, it must be understood that the parties had reference to local objects as they existed at the time the deed was made, unless there is something to control this presumption").

SBA argues that the northwesterly boundary of Crescent Road is a littoral boundary that must follow the naturally changing line as the natural process of accretion or erosion changes that line.  See Bergh v. Hines, 44 Mass. App. Ct. 590, 592 (1998) ("[L]ittoral [shoreline] boundaries are not fixed, because natural processes of accretion or erosion change them, and . . . easements, stated to run with such a boundary, ordinarily will follow the naturally changing line").  Of course, "[t]hat a natural monument may be ambulatory or impermanent does not negate its use as a boundary. . . .  When such a monument is used as a boundary, the boundary 'must be taken to refer to the condition of the land at the time the deed was given.'"  White v. Hartigan, 464 Mass. 400, 411 (2013), quoting Marvel v. Regienus, 329 Mass. 414, 418 (1952).  Here, although the trial judge invited SBA to present reliable evidence of any purported natural changes in the northwesterly side of Crescent Road, none was presented.  SBA points to no evidence (other than the Unit B

plan itself)[30] in the voluminous record that could shed light on (i) the intent of Kendrick and Hall with respect to the locations and dimensions of Lots 18 and 19 and Crescent Road, (ii) the location of either the high or low water line as of 1927 when the Unit B plan was recorded, or (iii) the mean high or low water mark along the northwesterly side of Crescent Road. Given SBA's failure to adduce any evidence to the contrary, we see no error in the judge's reliance on the Unit B plan as the best and only available evidence of record, regarding the intent of Kendrick and Hall.

In fact, contrary to its argument on appeal, SBA took the position during the bench trial that Island Pond's shoreline does not change naturally, arguing:

> "This isn't the ocean where the tides have a kind of force where they can literally change the shoreline over any period of time, or in a moment's time in a sever[e] storm or Northeaster. This is not a river or a stream where you can have flooding conditions and unusually rapid current and they can literally reshape and re-carve the bed of the pond because of the extraordinary conditions, this is a pond. It sits in the inlet. There's no force of nature that is going to cause accretion . . . ."

---

[30] Jalbert explained his opinion that the Unit B plan was the result of a field instrument survey and reliable given the precision of the dimensions.

Moreover, substantial evidence of artificial accretion emerged during the jury trial. One of SBA's witnesses testified that dump-truck loads of sand were added to the beach up to a half-dozen times between 1972 and 2004, and that on other occasions sand was dredged from the pond and deposited on the beach. Arthur Genova testified that between 1974 and 2005, the beach was "re-sanded" three times, with the last of those involving the deposit of two dump-truck loads, creating a three- to four-inch top layer of sand over the beach. He also testified that on one occasion, a bulldozer pulled sand out of the pond, though he could not supply a date.[31] Accordingly, there is ample evidence of artificial accretion, which is "not a recognized method of changing littoral boundaries." Bergh, 44 Mass. App. Ct. at 592. Given the foregoing, the trial judge properly admitted and adopted Exhibit 2 in the judgment.

6. Encroachment onto Lot 19. Because SBA brought no directed verdict motion, it waived any challenge to the sufficiency of the evidence presented in support of the Genovas' counterclaim for adverse possession of the ten- by fifty-foot

---

[31] In its verified complaint, SBA asserted that it periodically "re-sands" the beach.

strip encroaching on Lot 19.[32]  See International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 846-847 (1983); Bolton v. Massachusetts Bay Transp. Auth., 32 Mass. App. Ct. 654, 657-658 (1992).

7.  Implied easement.  SBA correctly argues that Declaration no. VI of the judgment, declaring that "Crescent Road is an easement for the benefit of the owners of all lots set forth on the Unit B plan," cannot stand, as the parties to this case lack standing to seek a declaration on behalf of nonparties.  See Uliasz, 357 Mass. at 104-105.  Contrast Cheever v. Graves, 32 Mass. App. Ct. 601, 604-605 (1992).  Moreover, adjudicating the existence of such an easement required the presence of additional indispensable parties.  Compare note 12, supra.

Conclusion.  The judgment shall be modified as follows.

Declaration no. IV is modified to provide that the owners of Lot 18 and Lot 19 own the fee in Crescent Road to the mid-point of the road.

So much of Declaration no. V as purports to declare the location of the division line in Crescent Road between Lots 17 and 18 is vacated.  The remainder of Declaration no. V shall be

---

[32] SBA's challenges to the trial judge's comments and to the omission of certain proposed jury instructions on the issue of the Genovas' encroachment onto Lot 19 lack merit.

modified to provide that the division line in Crescent Road between Lot 18 and Lot 19 shall be determined by extending their shared boundary lot line at right angles to the center line of Crescent Road.

As there has been a failure to join necessary parties, Declaration nos. VI and VII, concerning certain easement rights, are vacated.

Declaration no. VIII, concerning SBA's easement by prescription to the boat ramp, and referencing a map designated "Exhibit 2" to the judgment, shall be modified by adding that, to the extent Exhibit 2 conflicts with Declaration no. V as modified, Declaration no. V shall control.

As so modified, the judgment is affirmed.  The order denying the Genovas' motion to alter or amend the judgment is affirmed.

So ordered.

<u>Appendix</u>.

